UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DESTINY HOFFMAN, NATHAN CLIFFORD, JOSHUA FOLEY, JESSE HASH, ASHLEIGH SANTIAGO, JAMES BENNETT, AMY BENNETT, LEE SPAULDING, MICHAEL CAMPBELL, AMY TUTTLE, AMANDA CAMPBELL, BOBBY UPTON, SHANE BRATCHER (formerly "COUNTNEY COWHERD"), JUSTIN LANHAM, TRENTNEY RHODES, JOANIE WATSON, on behalf of themselves and on behalf of others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) 4:14-cv-12-SEB-TAB ) |
| JUDGE JEROME F. JACOBI, SUSAN KNOEBEL, JEREMY SNELLING, HENRY FORD, CLARK COUNTY SHERIFF DANNY RODDEN, DANIELLE GRISSETT, STEPHEN MASON, JOSEPH SEYBOLD UNKNOWN CLARK COUNTY WORK RELEASE EMPLOYEE(S)), UNKNOWN CLARK COUNTY CIRCUIT COURT CLERK AND CLARK COUNTY BOARD OF COMMMISSIONERS, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON MOTION FOR CLASS CERTIFICATION**

An Order entered by District Judge Sarah Evans Barker on March 20, 2015 (Filing No. 89), designated me, William G. Hussmann, Jr., United States Magistrate Judge, to conduct a hearing on Plaintiff's Motion to Certify Class (Filing No. 57) and issue a report and recommendation. The hearing was held on

June 9, 2015 (Filing No. 113).  I now enter my report and recommendation, as follows:

**Introduction**

The Plaintiffs in this case have all been participants in the Clark County Drug Treatment Court ("DTC").  The participants allege that they were held in jail for lengthy periods of time while awaiting placement in drug treatment facilities. Plaintiffs allege that the decision to hold them in jail pending placement was made without counsel, hearing, consideration of bond, or other rights of due process.  The instant motion requests certification of the following two separate subclasses, as outlined in Plaintiffs' First Amended Complaint:

> A.   All persons who were participants in Clark County's DTC Program and who were incarcerated for more than 72 hours without hearing and/or other due process of law from February 8, 2012, to the date of the order granting class certification.

> B.   All persons who are or will be subject to the jurisdiction of Clark County's DTC Program as a Drug Court participant and who therefore face or will face the possibility of being alleged or determined to be in violation of the rules, terms, and or policies of probation or Drug Court.

Proposed Subclass "A" requests monetary damages for each class member's loss of freedom, while Subclass "B" requests declaratory and injunctive relief only.

### Origins of Clark County Drug Treatment Court[1]

The origins of Clark County's Drug Treatment Court (hereinafter "DTC") began in 1992, when the Indiana Legislature established a framework for counties to establish alcohol and drug services programs in any county court with criminal jurisdiction.  Drug treatment courts are a particular type of "Problem Solving Court" created and defined by Indiana Code.  Ind. Code §33-23-16 *et seq.*

Clark County established its DTC in 2002.  Clark County's DTC was designed to target "non-violent felony offenders who are determined a high risk to reoffend by the Indiana Risk Assessment System (IRAS) and meet the diagnostic criteria for substance abuse or dependence." Clark County's DTC obtained jurisdiction over criminal defendants either through a deferral of prosecution or as a condition of probation.

Ind. Code § 33-23-16-14.5(c) establishes that a Problem Solving Court, upon receiving an allegation of a program violation, "shall conduct a hearing" in open court, with the participant entitled to written notice of the alleged violation, disclosure of adverse evidence, right to confront and cross-examine witnesses, and the representation by counsel.

---

[1] This section is taken nearly verbatim from Plaintiffs' Proposed Findings of Fact on Motion for Class Certification with only minor changes made that do not alter meaning. (Filing No. 110).  These "Origins" are not disputed by Defendants, and are included as context for further findings.

3

**Legal Standard**

1.  A class action may only be certified after a rigorous examination of whether the requirements of Federal Rule of Civil Procedure 23 have been met. *Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 225 (S.D. Ind. 2006) (*citing General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, (1982)).

2.  "Furthermore, the party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) (*citing Trotter v. Klincar*, 748 F.2d 1177 (7th Cir. 1984).

3.  The Seventh Circuit Court of Appeals in *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001), held that nothing in Rule 23 requires a district court judge to accept the allegations of the complaint as true.

The reviewing court must make whatever factual and legal inquiries it needs to make in order to resolve the issues pertaining to certification.  *Id.* at 676.

4.  Under Rule 23 of the Federal Rules of Civil Procedure, courts undertake a two-step analysis in determining whether class certification is proper. *Szabo v. Bridgeport Machines, Inc.*, 199 F.R.D. 280, 283-84 (N.D. Ind. 2001) (*reversed on other grounds*), citing *Hoffman v. Grossinger Motor Corp.*, 1999 WL 184179, 1 (N.D. Ill. 1999).

In the first step:

the court determines whether the four threshold requirements of subsection (a) of Rule 23 have been met.  These requirements are as

follows: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

*Id.* citing Fed. R. Civ. P. 23(a); *see also* *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998).

In the second step, "the court determines whether the action qualifies for class treatment under at least one of the subdivisions of Rule 23(b)." *Szabo,* 199 F.R.D. at 283-84 *citing* *Daniels v. Fed. Reserve Bank of Chicago,* 194 F.R.D. 609, 613 (7th Cir. 1977).

5. The portions of Fed. R. Civ. P. 23(b) applicable to this case are:

(b) **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
   (1) prosecuting separate actions by or against individual class members would create a risk of:
      (A)  inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
      (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
   (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or,....

6. Furthermore, "[t]here are two implied prerequisites to class certification that also must be satisfied prior to addressing the issues raised by Rule 23(a).

5

First, the class must be sufficiently defined so that the class is identifiable." *Harris v. Circuit City Stores, Inc.*, 2008 WL 400862 at 3, n.4 (N.D. Ill. 2008), *citing* Alliance to End Repression v. Rochford, 565 F.2d 975, 977 (7th Cir. 1977). "Second, the named representative must fall within the proposed class." *Id.*

In examining these two implied prerequisites, the court in *Ramirez v. Palisades Collection LLC*, 2007 WL 4335293 at *2 (N.D. Ill. 2007) noted that "[a]s a threshold matter, the court must decide whether the proposed class is sufficiently defined so as to be identifiable, and whether the named plaintiff falls within the class definition." *Id.*

## Factual Findings

1.  The Indiana Supreme Court provided Plaintiffs the criminal case numbers for all court-ordered entries into the Clark County DTC program from May of 2012 to the end of calendar year 2013.  Plaintiffs' counsel then inputted the case numbers for the court-ordered entries into Odyssey, the Indiana Court System's website, and obtained the "Chronological Case Summary" ("CCS") of 63 individuals who were detained in the Clark County Jail while participating in the DTC.[2]  Each of the following individuals was (1) a participant of Clark County

---

[2] I find that the CCSs provided to the Court were incomplete copies of those items.  However, even assuming that some CCSs are complete, these documents do not accurately reflect (a) whether a participant was represented by previously appointed counsel during Staffing Meetings or Status Conferences, or (b) whether previously appointed counsel was present during any Staffing Meetings or Status Conferences.

Drug Treatment Court, and (2) incarcerated for more than 72 hours after February 18, 2012.

| Class Member | Dates of Detention | # of Days |
|---|---|---|
| 1. Destiny Hoffman | April 26-August 8, 2012 | 104 |
|  | May 1-June 20, 2013 | 50 |
|  | August 22-January 23, 2013-14 | 54 |
| 2. Nathan Clifford | March 13-June 4, 2013 | 93 |
| 3. Josh Foley | June 27-September 3, 2013 | 67 |
| 4. Ashleigh (Hendricks) | May 16-June 21, 2013 | 36 |
| 5. Michael Campbell | June 22-July 29, 2013 | 37 |
| 6. Amy Tuttle | April 30-June 28, 2012 | 59 |
|  | May 10-July 8, 2013 | 60 |
| 7. Amanda Campbell | February 4-May 8, 2013 | 93 |
| 8. Bobby Upton | May 16-June 3, 2013 | 18 |
| 9. Justin Lanham | August 2-26, 2013 | 25 |
| 10. Tretney Rhodes | December 3-21, 2012 | 19 |
| 11. Joannie Watson | April 26-May 10, 2012 | 15 |
|  | May 16-June 14, 2013 | 30 |
| 12. Jason O'Connor | April 10-May 22, 2013 | 43 |
|  | June 18-January 24, 2013-14 | 220 |
| 13. Julia Joseph | January 17-March 12, 2013 | 55 |
|  | April 3-May 3, 2013 | 30 |
|  | October 14-21, 2013 | 7 |
| 14. Anthony Callaway | January 3-March 29, 2013 | 86 |
|  | June 24-July 5, 2013 | 11 |
| 15. Katherine Tudor | August 8-November 2, 2012 | 87 |
|  | July 22-August 30, 2013 | 39 |
| 16. Brandon Layton | July 11-August 15, 2013 | 36 |
| 17. James Collmann | August 15-22, 2013 | 7 |
| 18. James Hendrick | July 25-August 15, 2013 | 22 |
|  | September 23-October 25, 2013 | 27 |
| 19. Jennifer Wall | December 27-March 5, 2012-13 | 69 |
|  | October 14-21, 2013 | 8 |
| 20. Deanna Wilkins | May 16-21, 2013 | 5 |
| 21. Jacqueline Snelling | August 31-December 14, 2012 | 106 |
|  | May 10-July 19, 2013 | 70 |
| 22. Courtney Harris | February 19-March 28, 2012 | 38 |
| 23. Heather Holden | April 4-May 24, 2012 | 50 |
| 24. Ricky Houston | March 23-April 16, 2012 | 24 |
|  | July 5-23, 2012 | 19 |
| 25. Jarvis Peele | April 17-May 2, 2013 | 16 |
| 26. Christopher Klingsmith | April 19-October 29, 2012 | 194 |
| 27. Christina Hamilton | January 24-30, 2013 | 6 |
|  | June 26-July 24, 2013 | 28 |
| 28. Terry Gill | September 1-November 1, 2012 | 50 |

| | | |
|---|---|---|
| 29. Amanda Barksdale | May 22-30, 2013 | 9 |
| 30. Jerry Houchens | October 22-November 24, 2012 | 34 |
| 31. LeeAnn Rager | October 12-November 30, 2012 | 50 |
| 32. Jessica Hobbs | May 15-June 25, 2013 | 41 |
| | July 20-30, 2013 | 10 |
| 33. Alyssa Samuels | May 16-21, 2013 | 6 |
| 34. Brandelyn Taylor | August 7-13, 2013 | 6 |
| 35. Brandy Green | December 20-January 9, 2014 | 20 |
| 36. Kristen Spicer | May 16-23, 2013 | 7 |
| | June 27-July 11, 2013 | 14 |
| 37. Travis Jenkins | October 24-November 14, 2013 | 21 |
| 38. Shawn Gilbert | May 29-July 1, 2013 | 33 |
| 39. Alisha Dannheiser | February 13-March 13, 2014 | 28 |
| 40. Adrian Anderson | September 20-27, 2012 | 7 |
| 41. Julius Johnson | January 10-17, 2013 | 7 |
| 42. Randall Cozart | August 2-September 6, 2012 | 35 |
| 43. Nathan Senn | November 1-8, 2012 | 8 |
| 44. Kenneth Mulliken | March 1-8, 2012 | 8 |
| | March 13-April 17, 2012 | 35 |
| | August 17-September 11, 2012 | 25 |
| 45. Kara Johnson | October 3-25, 2012 | 22 |
| 46. George McIntyre | April 5-June 14, 2012 | 70 |
| | August 2-September 6, 2012 | 35 |
| 47. James Cecil | May 20-28, 2013 | 8 |
| 48. Justin Clay | August 8-14 | 6 |
| 49. Anthony Crone | December 9-January 9, 2014 | 31 |
| 50. Andrew DeMatos | March 21-April 4, 2013 | 14 |
| | August 15-22, 2013 | 7 |
| | September 12-26 | 14 |
| 51. Meggan Dolbeare | August 29-September 27, 2012 | 29 |
| 52. Nicholas French | June 13-27, 2013 | 14 |
| | September 12-26, 2013 | 14 |
| | October 21-November 7, 2013 | 17 |
| 53. Sarah Hubbard | March 14-May 8, 2013 | 55 |
| 54. David Hyre | February 22-March 7, 2013 | 13 |
| | April 25-July 29, 2013 | 95 |
| | November 7-December 13, 2013 | 36 |
| 55. Clay Ingram | March 7-April 4, 2013 | 28 |
| | September 19-26, 2013 | 7 |
| 56. William Jernigan | April 26-May 23, 2013 | 27 |
| 57. Tiffany Johnson | July 25-August 8, 2013 | 14 |
| 58. Jeremy Leavell | November 1-December 12, 2012 | 41 |
| 59. Lisa Masingo | September 12-26, 2013 | 14 |
| 60. Laura Payton | June 14-September 27, 2012 | 105 |
| | April 25-May 23, 2013 | 28 |
| | June 27-July 5, 2013 | 8 |
| | August 1-8, 2013 | 8 |
| 61. Joseph Thomas | January 22-February 6, 2013 | 15 |
| | April 11-22, 2013 | 11 |

8

| 62. Anthony Yarbrough | November 14-December 5, 2013 | 21 |
| 63. Jessica St. John | May 16-23, 2013 | 7 |

3.   Participation in the DTC began when a criminal defendant accepted a plea agreement in which he/she agreed to enter DTC in consideration of a deferred prosecution or a probated sentence.  In many if not most cases, the Court granted counsel for the defendant's motion to withdraw shortly after the plea was entered.

4.   The defendant would then enter "Phase 1" of the program and appear weekly before the Court to assess the participant's continued sobriety and compliance with the program.

5.   At some point, a "case manager" received information that the DTC participant had violated some term of his/her participation requirement and brought this information to a "Staffing Meeting."

6.   Each DTC participant was then brought before the Staffing Meeting based on the representation of the case manager.

7.   No DTC participant was advised of a right to have counsel present at the Staffing Meeting, nor did any of the participants receive the appointment of counsel specifically to address the new alleged violation at the Staffing Meeting.

8.   No DTC participant was given written notice of the new alleged violation prior to appearing at the Staffing Meeting.

9.   After the Staffing Meeting was held, the staff would determine what sanction should issue for the violation.  (Deposition of Susan Knoebel, at p. 43.) The DTC participant would be advised of the sanction.  (*Id.*)

9

10.  Frequently the DTC participant was taken to the Clark County Jail from the Staffing Meeting and was held until a court "Status Conference" could be held.

11.  Based upon the decision at the Staffing Meeting, the DTC participant would then be brought to a Status Conference before Judge Jacobi.  At the Status Conference, the DTC Case Managers (Josh Seybold and Iris Rubadoe), the program director (Susan Knoebel), the bailiff and the correctional officers who brought the DTC participant from the Clark County Jail.

12.  Defense counsel for the participants were rarely if ever present for the Status Conference.  (*Id.* at 53, 98.)

13.  Throughout the time period at issue, Judge Jacobi could not recall any specific time that he made a sanction decision that was different than what was recommended to him.  (Deposition of Jerome Jacobi, at pp. 89-95.)  Josh Seybold could only recall one situation where the Judge disagreed with the sanction imposed by the staff.  (Deposition of Joshua Seybold, at p. 106.)

14.  Prior to or at the Status Conference, DTC participants were not advised of their rights to have counsel present.  (Deposition of Jerome Jacobi, at pp. 107-108.)

15.  If a violation of DTC requirements was deemed to be very serious, a written Petition to revoke participation in the DTC would be filed and a formal court hearing based upon the petition would be held.  Defense counsel would be present at the revocation proceedings.

**Analysis**

In order to determine whether class certification is proper in this case, the Court first addresses the "two implied prerequisites to class certification that also must be satisfied prior to addressing the issues raised by Rule 23(a)." (*See infra,* Conclusion of Law 6.)  In this particular case, I conclude that an identifiable classes could be demonstrated by the factual findings above, as follows:

(1)   All persons who were participants in Clark County, Indiana's Drug Treatment Court Program and who were incarcerated for more than 72 hours;

     (a)   after appearing before a Staffing Meeting;

     (b)   who was not given written notice of the new alleged violation prior to appearing at the Staffing Meeting;

     (c)   who appeared at the Staffing Meeting without being advised of their right to counsel during the Staffing Meeting;

     (d)   who were taken directly from the Staffing Meeting to the Clark County Jail; and

     (e)   were held greater than 72 hours prior to a Status Conference before a judge of the court.

(2)   A second identifiable class would consist of those DTC participants who:

     (a)   were brought for a Status Conference before a judge of the court;

     (b)   were not given written notice of newly alleged violations before the Status Conference;

     (c)   were not advised of their right to counsel before the Status Conference;

     (d)     were not represented by defense counsel at the Status Conference;

     (e)     continued to be held in custody for a period of time greater than 72 hours awaiting placement at a treatment facility; and

     (f)     were not thereafter provided with a petition to formally terminate their participation in the DTC.

This Court's review of Destiny Hoffman's CCS and dates of detention suggests that she was subjected to the procedures to which other members of the class seek relief. Therefore, the Court concludes that the two implied prerequisites to class certification (a defined class and a representative who falls within the class) have been met.

With respect to the four threshold requirements of Subsection (a) of Rule 23, I conclude that while not all of the 63 persons identified by the Plaintiffs to date may ultimately be found to have claims, there are a sufficient number of people likely to have claims that fit within the class to exceed 40 or more persons. Therefore, the numerosity prong of the rule is satisfied.

Based on the descriptions of the class as amended, I conclude that there are questions of law common to the class. Specifically, the question of law addresses whether elements of due process are satisfied for those individuals who were called for Staffing Meetings and were thereafter directed to jail for greater than 72 hours without written notice of the alleged violation, the right to have counsel to assist them, and who remain detained for greater than 72 hours without a finding of probable cause by a judicial official. Likewise, with respect

12

to the second class, a common issue of law exists as to whether those persons who appeared before a judicial official without a written notice of the violation and without the assistance of counsel and who were thereafter detained by a judicial officer for extended periods of time (often until treatment facilities were available) have been denied due process.  Therefore, there are common questions of law that relate to both of the classes.

As previously discussed, the claims of Destiny Hoffman are representative of the claims of the class.

Finally, there is no showing at this stage that Ms. Hoffman is not an appropriate representative who will adequately protect the interests of the class.

As to the requirements of Fed. R. Civ. P. 23(b), I find that prosecuting individual actions by the class members could create a risk of inconsistent adjudications that would establish incompatible standards for those who currently direct the Clark County DTC.  I also find that prosecuting separate actions would create a risk of adjudications with respect to individual class members that as a practical matter would be dispositive of the interests of the other members not parties to the individual adjudications.  Finally, I find that the Defendants have conducted their DTC procedures on grounds that apply generally to the class so that any final injunctive or declaratory relief is appropriate respecting the class as a whole.

It must be noted that the Defendants in this case raise a strong argument that class certification must be denied when the Court must conduct

13

individualized examinations of class members to determine whether they meet the class definition.  There is some case law from a District Count in this Circuit to support that position. "If the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification." *Ramirez*, 2007 WL 4335293 at *2 (court denied certification because the determination of whether individual class members would meet class definition would require onerous fact finding) (*citing Pastor v. State Farm Mutual Automobile Ins. Co.*, No. 05 C 1459, 2005 WL 2453900 at *2 (N.D. Ill. 2005)). However, in this case, by defining the class in the manner that I have done, the primary relief in this case is declaratory in nature.

The Court will determine whether the procedures applicable to DTC participants during the time at issue (and within the applicable statute of limitations) meet the requirements of due process.  A determination by this Court that due process was met ends the litigation in its entirety.  In the event the Court should determine that due process rights were violated, the issue of what damages a class member is entitled to can be established on an equitable basis among the class members.  The burden to the Plaintiffs in conducting this case as a class action is that each member of the class gives up the right to individualized consideration of his or her damage claim in order to obtain the benefit of the uniform determination of liability.  Those Plaintiffs who believe they were damaged in an extreme manner and deserve compensation at a greater level than others similarly situated still have—at this time—the right to

14

bring an individual claim.  Until this Report and Recommendation is adopted or rejected by the District Judge, Plaintiffs have time to consider whether the loss of their right to seek individualized damage claims should cause them to abandon the request for class certification.

### Recommendation

I **RECOMMEND** that the District Judge grant the Motion to Certify the class, in part.  The Motion should be granted, but the classes certified should be defined as follows:

(1)   The first identifiable class would consist of all persons who were participants in Clark County, Indiana's Drug Treatment Court Program and who were incarcerated for more than 72 hours;

    (a)   after appearing before a Staffing Meeting;

    (b)   who was not given written notice of the new alleged violation prior to appearing at the Staffing Meeting;

    (c)   who appeared at the Staffing Meeting without being advised of their right to counsel during the Staffing Meeting;

    (d)   who were taken directly from the Staffing Meeting to the Clark County Jail; and

    (e)   were held greater than 72 hours prior to a Status Conference before a judge of the court.

(2)   A second identifiable class would consist of those DTC participants who:

    (a)   were brought for a Status Conference before a judge of the court;

    (b)   were not given written notice of newly alleged violations before the Status Conference;

(c)     were not advised of their right to counsel before the Status Conference;

(d)     were not represented by defense counsel at the Status Conference;

(e)     continued to be held in custody for a period of time greater than 72 hours awaiting placement at a treatment facility; and

(f)     were not thereafter provided with a petition to formally terminate their participation in the DTC.

**SO RECOMMENDED.**

**Dated:**  September 29, 2015

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

Served electronically on all ECF-registered counsel of record.

16