UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| DESTINY HOFFMAN, *et al.* ) | | |
| Plaintiffs, ) | | |
| ) | | |
| vs. ) | | 4:14-cv-00012-SEB-TAB |
| ) | | |
| SUSAN KNOEBEL, *et al.* ) | | |
| Defendants. ) | | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendants Whitney Newton's and Clark County Board of Commissioners' motion for summary judgment with regard to Plaintiff Lee Spaulding's claims [Docket No. 143], filed on February 10, 2016. For the reasons explained in this Order, Defendants' motion is **GRANTED**.[1]

**Background**[2]

Lee Spaulding was arrested on February 28, 2013 for Possession of Marijuana. On March 6, 2013, an Information was filed and probable cause was found. That same day,

---

[1] In Plaintiff's response to Defendants' motion, he stated, "[i]n the interest of simplicity and judicial economy, Plaintiff Lee Spaulding now chooses to forego his claims against the Clark County Commissioners." Dkt.150 at 3. Accordingly, we **GRANT** Defendants' motion with regard to Spaulding's claims against the Clark County Board of Commissioners.

[2] The facts detailed herein concern only those involved in this motion, namely, Lee Spaulding and Whitney Newton, and are undisputed by the parties.

1

an initial hearing was held in which Mr. Spaulding appeared *pro se.* At the hearing, he was informed by Judge Joseph Weber of Clark Circuit Court No. 3. that he could enter into a diversion program and have the charges against him dismissed, if he contacted the Prosecutor's Office and paid a $300 diversion fee before July 16, 2013. The court then set a pretrial conference for April 17, 2013, which date was later changed to July 16, 2013—the deadline by which Spaulding was to pay the pretrial diversion fee.

As a standard practice, Clark Circuit No. 3 maintained a list of all pretrial conferences occurring on a given day and posted the list outside the courtroom. A deputy prosecutor from the Prosecutor's Office would meet with defendants and their counsel in a room outside the courtroom. The Prosecutor's Office maintained a separate list for all *pro se* defendants to sign when they met with the deputy prosecutor. That list is later provided to the court staff to indicate who appeared for their pretrial conferences on that day. The court staff and/or deputy prosecutor also typically called the names of all *pro se* defendants in the hallway of the courthouse to determine if any defendant whose name appeared on the list was present but had not conferred with the prosecutor or signed the aforementioned list. If a defendant had not signed the prosecutor's list, was not present when his or her name was called, and was not otherwise identified as having appeared for his or her conference, the court issued an arrest warrant based on the defendant's failure to appear.

On July 16, 2013, Spaulding arrived at the courthouse and met with a deputy prosecutor from the Prosecutor's Office in a room immediately outside Judge Weber's

courtroom. During the meeting, Spaulding executed a Misdemeanor Pretrial Diversion Agreement and paid the $330 diversion fee. Afterward, Spaulding left the courthouse without having had any contact with Judge Weber or any other court employee. The deputy prosecutor with whom Spaulding had met failed to obtain Spaulding's signature on the *pro se* list, to file the pretrial diversion agreement which Spaulding had executed, or otherwise to inform the court that Spaulding had been present for his conference. Later that day, Judge Weber issued a failure-to-appear bench warrant for Spaulding's arrest.

On the evening of September 11, 2013, Spaulding was arrested at his home pursuant to the warrant and taken to the Clark County Jail, where he remained incarcerated for the next fourteen hours until his release the following morning. After Spaulding's release on September 12, 2013, the Clark County Prosecutor's Office filed Spaulding's Misdemeanor Pretrial Diversion Agreement with the court and Judge Weber entered an order withholding prosecution.

Mr. Spaulding's claim in this action is against Defendant Whitney Newton as the court clerk for Clark Circuit Court No. 3 in her individual capacity, alleging that her "actions and inactions…directly caused constitutional deprivations." Dkt. 17 ¶ 36.[3]

---

[3] Spaulding also brought claims against Newton in her official capacity "for intentional actions in implementing and executing Clark County's unconstitutional policies, decisions, customs and practices, as well as the employee's unlawful inactions which were the result of and represented 'deliberate indifference' to the constitutional rights of Plaintiffs." Dkt. 17 ¶ 36. Neither party, however, has addressed Spaulding's official capacity claims, and while it is well-established that a defendant may assert personal immunity defenses in her individual capacity, the only immunities available to a defendant in an official capacity action are those that the governmental entity possesses. *See Kentucky v. Graham*, 473 U.S. 159 (1985). Because the parties do not address Spaulding's claims against Newton in her official capacity, we interpret this motion as one for summary judgment on only Spaulding's claims against Newton in her individual capacity.

Specifically, Spaulding accuses Newton of violating his Fourth, Fifth, and Fourteenth Amendment rights by crafting "an apparent wrongful entry in the court record directly resulting in the subsequent issuance of an arrest warrant against Mr. Spaulding for failing to appear…ultimately resulting in Mr. Spaulding's unlawful arrest…" Dkt. 17 ¶ 180.

On February 10, 2016, Newton filed this motion for summary judgment asserting her entitlement to immunity from suit on Plaintiff's claims. Dkt. 143. Having been fully briefed as of March 23, 2016, the motion is now ripe for decision.

**Legal Standard**

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See *id.* at 255. However, neither the mere existence of some alleged factual dispute between the parties, *id.* at 247, nor the existence of some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

4

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

## Discussion

Defendant Newton contends that she is entitled to absolute quasi-judicial immunity on Spaulding's claims. Quasi-judicial immunity is an extension of the absolute judicial immunity granted to judges acting within their judicial jurisdiction. Quasi-

judicial immunity has been applied to court personnel such as court clerks generally in two circumstances: (1) when they perform judicial or quasi-judicial functions, or (2) when they undertake administrative actions pursuant to the explicit direction of a judicial officer. *See Kincaid v. Vail*, 969 F.2d 594, 600–02 (7th Cir. 1992); *Snyder v. Nolan*, 380 F.3d 279, 286–87 (7th Cir. 2004).

Newton contends that she is absolutely immune from liability in this case because she was performing a quasi-judicial function. Claims of immunity made under the first prong require us to determine whether the actions taken by a defendant were "an integral part of the judicial process." *Kincaid*, 969 F.2d at 601. The paradigmatic example of a quasi-judicial action is a court clerk's issuance of an arrest warrant. *See Id.* ("Certainly, when such personnel perform judicial or quasi-judicial functions such as the issuance of arrest warrants, they perform a function integral to the judicial process and receive the same protection as full-fledged judicial officers."); *see also Newton v. Buckley,* 127 F.3d 1109 (10th Cir. 1997) ("The circuits are in general agreement that a clerk's issuance of a warrant involves a quasi-judicial act and, therefore, carries with it the protections of absolute immunity.").

Our case, however, is slightly less straightforward given that Newton did not actually issue the bench warrant for Spaulding's arrest; rather, Newton prepared the warrant, which was then accepted, executed, and entered by Judge Weber. See Dkt. 145-2 at 24. Plaintiff attempts to seize upon this distinction to defeat Newton's invocation of absolute immunity by arguing that although her conduct would have been quasi-judicial

6

had she signed and issued the warrant herself, her preparation of the warrant for Judge Weber's signature was not integral to the judicial process. Plaintiff thus admits that Judge Weber, not clerk Newton, issued the erroneous warrant leading to his arrest, yet seeks to hold Newton, rather than Weber, responsible both for the warrant and his arrest. See Pl.'s Resp. at 2 ("[I]t was determined by Defendant Whitney Newton that Mr. Spaulding had not appeared that day and, *as a result*, a warrant for his arrest was issued."); see also First Am. Compl. ¶ 180 (accusing Newton of crafting "an apparent wrongful entry in the court record *directly resulting* in the subsequent issuance of an arrest warrant against Mr. Spaulding for failing to appear…*ultimately resulting* in Mr. Spaulding's unlawful arrest…").[4]

We find both this analysis and its corresponding result unpersuasive. As the Seventh Circuit has instructed, we must "keep paramount in our analysis that absolute immunity is designed to free the *judicial process* from the harassment and intimidation associated with litigation." *Kincaid*, 969 F.2d at 601 (internal quotes omitted) (emphasis in original). Moreover, when dealing with claims of immunity by auxiliary judicial personnel, "we must remember 'the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts…warrants this extension of the

---

[4] Indeed, at certain points Spaulding confusingly suggests that Newton did in fact "issue" the bench warrant. See Pl.'s Resp. at 7 ("Here…Defendant Whitney Newton, the court clerk, was responsible for determining who did and who did not appear for the July 16, 2013 court date, and *subsequently issuing a failure-to-appear bench warrant* to Judge Weber for signature…Defendant Whitney Newton did not do any of these non-discretionary, ministerial tasks *prior to issuing the bench warrant*.") (emphasis added).

7

doctrine.'" *Id.* (quoting *Scruggs v. Moellering,* 870 F.2d 376, 377 (7th Cir.), *cert. denied,* 493 U.S. 956 (1987)).

That danger presents itself here. Plaintiff has brought no claims against the deputy prosecutor who failed to alert the court that Plaintiff had appeared at the pretrial conference or against the judge who issued the failure-to-appear bench warrant on which he was arrested, both of whom clearly were judicial officers engaged in protected activity. Instead, by focusing on the actions of the court clerk who prepared the bench warrant for the judge's signature, Plaintiff attempts to rescue his claim. This is precisely the kind of harassment quasi-judicial immunity is meant to prevent.

We agree with those courts who having addressed this issue found that a court clerk who prepared a warrant, which was later accepted and issued by a judge, was entitled to the same quasi-judicial immunity she would have been had she herself issued the warrant. *See Mosley v. Bass River Mun. Court*, 2006 WL 2264835, at *3 (D. N.J. Aug. 7, 2006); *Ford v. Kenosha County*, 466 N.W.2d 646 (Wis. 1991) (relying on Seventh Circuit precedent). Simply because the judge's signature, rather than her own, appears on the warrant, her conduct is not stripped of its judicial nature; rather, we find that the preparation of a warrant constitutes quasi-judicial conduct regardless of whether it is performed in a jurisdiction where the clerk has ultimate authority to issue the warrant or in a jurisdiction where the clerk simply prepares the warrant for the judge to sign and issue. Accordingly, having determined that she is entitled to immunity for her actions in

8

the preparation of the warrant, we **GRANT** Defendant Newton's motion for summary judgment on Spaulding's individual claims.

## Conclusion

For the foregoing reasons, we hereby **GRANT** Defendants' Motion for Summary Judgment [Docket No. 143] and **DISMISS** Plaintiff Lee Spaulding's claims against Defendant Clark County Board of Commissioners and against Defendant Whitney Newton in her individual capacity.

IT IS SO ORDERED.

Date: 4/29/2016

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Douglas Alan Hoffman
CARSON BOXBERGER
hoffman@carsonboxberger.com

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL
jonathan.nagy@atg.in.gov

James Michael Bolus, Jr.
JAMES M. BOLUS, JR. P.S.C.
bo@boluslaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP-New Albany
jlowe@k-glaw.com

Whitney Elizabeth Wood
KIGHTLINGER & GRAY, LLP-New Albany
wwood@k-glaw.com

Brian P. Butler
LAW OFFICE OF BRIAN BUTLER
brian.butleresq@yahoo.com

Michael A. Augustus
MICHAEL A. AUGUSTUS, PSC
mike@boluslaw.com

David A. Arthur
OFFICE OF THE ATTORNEY GENERAL
David.Arthur@atg.in.gov

Brennan Soergel
SOERGEL LAW OFFICE PLLC
brennan@boluslaw.com

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com

Wayne E. Uhl

STEPHENSON MOROW & SEMLER
wuhl@stephlaw.com