UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DESTINY HOFFMAN, *et al.* | ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 4:14-cv-00012-SEB-TAB |
| | ) |
| SUSAN KNOEBEL, *et al.* | ) ) |
| Defendants. | ) ) |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF JESSE HASH

This cause is before the Court on Defendants' "Motion for Summary Judgment as to Jesse Hash's Claims Only" [Docket No. 166], filed on May 4, 2016. For the reasons detailed below, Defendants' Motion for Summary Judgment as to Plaintiff Jesse Hash is GRANTED in part and DENIED in part.

### Factual Background

On July 15, 2013, Plaintiff Jesse Hash was arrested on felony drug charges in Clark County, Indiana. Following his arrest, he was released on his own recognizance and scheduled to return to the Clark Circuit Court for an initial hearing on July 24, 2013. When Hash failed to appear for the July 24 hearing, Clark Circuit Judge Daniel Donohue ordered that a failure to appear warrant be issued for his arrest. The warrant was issued on July 26, 2013 and served on August 8, 2013, at which time Hash was taken to the Clark County Jail. Hash remained incarcerated in the Jail for a total of sixty days, until

1

October 7, 2013, when he appeared before Clark Circuit Judge Jerome Jacobi for an Initial Appearance. At the Initial Appearance, Hash was notified of the charges against him, advised of his constitutional rights, appointed counsel, and, following his plea of not guilty, released on his own recognizance.

Hash maintains that during his sixty-day incarceration in the Clark County Jail, he repeatedly inquired of the jail's guards as to whether they had any information regarding his seemingly protracted detention without a hearing or whether they could help him obtain such information, to which the guards replied, simply: "You'll get called when they call your name" and "You'll go to court when they call your name." Hash Dep. 81: 23–24. Hash also claims to have raised frequent verbal complaints with the guards regarding his incarceration, and, at one point, drafted a letter intended for the Clark County Public Defenders' Office, although he never received confirmation that the letter had been delivered. According to Hash, it was not until his girlfriend, Stephanie Leonard, with whom he had had telephone contact, placed a call to the Clark Circuit Court Clerk's Office on his behalf on October 6, 2013, that he was finally granted his Initial Appearance the following day, on October 7, 2013.[1]

---

[1] Pursuant to Local Rule 56-1(i) Defendants request in their Reply that we strike the following items of evidence to which Plaintiff makes reference in his Response: (1) any and all references to other Plaintiffs in this case, (2) any and all references to a Consent Decree entered into by Sheriff Rodden in a prior litigation, (3) Hash's testimony regarding the content of any conversation between Stephanie Leonard and the Clark County Courthouse, and (4) Hash's characterization of Judge Jacobi's alleged reprimand of "county personnel" at his Initial Appearance on October 7, 2013. See Dkt. 188. The weight of this evidence is *de minimis* and its significance is immaterial as support for Hash's position; as such, it has played no role in our analysis of the issues before us. Accordingly, the aforementioned motions to strike are DENIED.

Defendants maintain that Hash never requested information in writing nor did he file a formal grievance or complaint with the Jail regarding the length of his incarceration. Defendants also assert that pursuant to an unwritten policy, the Clark County Sheriff's Department produced a roster each week to the Clark Circuit Court relating to inmates housed in the Jail which covered Hash's incarceration from August 8, 2013 to October 7, 2013.

On February 18, 2014, Plaintiff Jesse Hash commenced the present litigation against Defendants Clark County Board of Commissioners and Clark County Sheriff Danny Rodden, suing him in both his individual and official capacities, alleging violations of the Fourth, Fifth, And Fourteenth Amendments of the United States Constitution. See Dkt. 171 ¶¶ 176–81.

On May 4, 2016, Defendants moved for summary judgment on Hash's claims. Dkt. 166. The motion became fully briefed on June 29, 2016 and is now ripe for decision by this Court.

## **Legal Standard**

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material

fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See *id.* at 255. However, neither the mere existence of some alleged factual dispute between the parties, *id.* at 247, nor the existence of some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only

appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).  Further, a failure to prove one essential element necessarily renders all other facts immaterial.  *Celotex*, 477 U.S. at 323.

## Discussion

In responding to Defendants' Motion for Summary Judgment, Hash has abandoned his claims against the Clark County Board of Commissioners as well as his Fourth Amendment claims against all Defendants. See Dkt. 185. Accordingly, remaining before us for resolution are Hash's Fourteenth Amendment claims against Defendant Clark County Sheriff Danny Rodden for the alleged deprivation of due process as a result of his sixty-day incarceration at the Clark County Jail without a hearing before a judicial officer.[2]

Hash has raised his due process claims pursuant to 42 U.S.C. § 1983. Section 1983 imposes liability on any "person" who, while acting under color of state law, violates an individual's federally protected rights. In raising a claim under this statute, a plaintiff may name a defendant in his individual or official capacity. Individual-capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law," *Hafer v. Melo*, 502 U.S. 21, 25 (1991), whereas official-capacity claims seek to impose liability on the entity for whom the officer works, *Brandom v.*

---

[2] Although Hash alleged violations of the Fifth and Fourteenth Amendment in his Amended Complaint, the due process protections for which he seeks vindication are conferred by the Due Process Clause of the Fourteenth Amendment. *See Coleman v. Frantz*, 754 F.2d 719, 723 (7th Cir. 1985). Accordingly, it is pursuant to Fourteenth Amendment jurisprudence that we review his claim.

5

*Holt*, 469 U.S. 464, 471 (1985). Given this difference between the involvements of the parties ultimately found responsible for the plaintiff's harm, separate issues arise as to their personal involvement, the widespread customs and policies, policymaking authorities, and causation in deciding individual-capacity and official-capacity claims. Because Hash has named Sheriff Rodden in his individual and official capacities, we address these claims separately below.

### I. Official-Capacity Claim

We address first Hash's suit against Clark County Sheriff Danny Rodden in his official capacity. As the Supreme Court recognized in *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), a suit against an officer in his official capacity "generally represent[s] only another way of pleading an action against [the] entity of which [the] officer is an agent." Accordingly, we interpret Hash's official-capacity claim as one against the Clark County Sheriff's Department, a local government entity subject to suit for damages under Indiana law. *See Burton v. Lacy,* 2008 WL 187552, at *5 (S.D. Ind. 2008) ("[N]aming the Sheriff in his official capacity is the same thing as bringing suit against the Sheriff's Department.").

In order to hold the Department liable under 42 U.S.C. § 1983, Hash must show that (1) he suffered a deprivation of a federal right, (2) as a result of either an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the entity at issue, which (3) was the proximate cause of his injury. *See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978) (holding

6

that a local government is liable under § 1983 for its policies that cause constitutional deprivations); *Ienco v. City of Chi.,* 286 F.3d 994, 998 (7th Cir. 2002).

The first determination we must make, therefore, is whether Hash can demonstrate some deprivation of his constitutionally-protected rights. *See Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) ("[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot be supported."). Defendants have, understandably, all but conceded this point, choosing instead to attack Hash's claim on the elements of causation and liability. Nevertheless, we note that Hash has alleged that he was arrested pursuant to a warrant on August 8, 2013 and detained for sixty days in the Clark County Jail prior to his initial appearance on October 7, 2013. See Second Am. Compl. at ¶ 177. The Seventh Circuit held in *Coleman v. Frantz*, 754 F.2d 719 (7th Cir. 1985), that the Due Process Clause of the Fourteenth Amendment guards against the prolonged confinement, without an appearance before a judicial officer, of an arrestee following his arrest pursuant to a valid arrest warrant. More specifically, the Court held that "the plaintiff's eighteen-day detention without an appearance before a judge or magistrate was a deprivation of liberty without due process of law." *Id.* at 723. Likewise, the Seventh Circuit held in *Armstrong v. Squadrito*, 152 F.3d 564, 576 (7th Cir. 1998) that a plaintiff's fifty-seven-day incarceration without a hearing following his civil arrest violated his due process rights. It naturally follows that Hash's sixty-day detention at the Clark County Jail without a hearing before a judicial officer deprived Hash of due process in violation of the Fourteenth Amendment.

The question we must answer, and the one on which Defendants focus their attention, is: who should be held accountable for Hash's deprivation? As we explained above, Hash's official-capacity claim seeks to hold the Sheriff's Department liable. Because § 1983 holds liable only those who "subject[]…or cause[] to be subjected" another to a deprivation of a constitutional right, for Hash to succeed on his claims against the Sheriff's Department, he must show that his constitutional injury was proximately caused by a Sheriff's Department policy, widespread custom, or the deliberate act of a decision-maker with final policy-making authority for the Department. *See Monell*, 436 U.S. at 694.

Relying on two cases from the Seventh Circuit—*Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998) and *Luck v. Rovenstine*, 168 F.3d 323 (7th Cir. 1999)—Hash contends that the Clark County Jail's unwritten policy of sending weekly emails of the Jail's inmate roster to the Clark County Courts was constitutionally inadequate in that it abdicated the Sheriff Department's responsibility of care for the inmates in its custody and exhibited an indifference to the rights of those inmates housed in the Jail who were awaiting an initial appearance following their arrest and detention.

In *Armstrong*, the Seventh Circuit dealt with the Allen County Jail's "will call" policy, under which the jail transmitted to the Allen County Courts a "will call" list of case numbers for several categories of arrestees housed in the jail, including those arrested on probation and parole violations as well as those arrested for failure to appear. 152 F.3d at 577–78. Following transmission of the list, the jail took no other action

regarding those arrestees other than to wait for communication from the court regarding a hearing date. *Id.* at 578. Crucially, no one at the jail assumed responsibility to ensure that the detainees on will call list received an expeditious appearance, nor were there any procedures for determining when a detainee on the will call list had waited too long for an appearance. *Id.* "In other words, the jail's policy was that once it placed a detainee's name on the will call list, the jail left the matter in the hands of the court." *Id.* As a result of the policy, and due in part to a scrivener's error in transcribing his case number, the plaintiff was held in the jail for fifty-seven days prior to his initial appearance.

Commenting on the plainly obvious dangers presented by such a policy, the court stated, "In a constitutional sense, how much more basic could it get—jails cannot confine people without the authority to do so. A policy that ignores whether the jail has the authority for long-term confinement seems to be a policy of deliberate indifference." *Id.* at 578–79. Indeed, the court went on to state that "the will call system in place at the time of Armstrong's arrest and detention…seems to amount to a policy of deliberate indifference." *Id.* However, the court ruled that the jail's "backup plan" of accepting formal written complaints from the detainees, in which complaints the detainees could request information on either their court date or release date, "demonstrate[d] an understanding on the jail's part that detainees need an avenue to address prolonged, improper confinement" such that the backup plan saved the will call policy from being deliberately indifferent, at least on its face. *Id.* This did not defeat the plaintiff's claim, however. Armstrong maintained that while the will call policy may have been facially

9

adequate due to the formal complaint procedures, the jail maintained another policy under which the officers refused to accept the detainees' complaints. The Seventh Circuit found that "the refusal to accept complaints vitiates the salutary effect of the complaint form and returns us to the serious problems evident in the will call system." *Id.* at 579–80. Accordingly, it held that the plaintiff's claims of deliberate indifference were entitled to survive summary judgment. *Id.*

A year later in *Luck v. Rovenstine*, 168 F.3d 323 (7th Cir. 1999), the Seventh Circuit was presented with a case involving a plaintiff who had been transported and booked in the Kosciusko County Jail following his arrest by an Indiana State Trooper. Due to the Kosciusko County Sheriff's divergent policies for detainees brought in by his officers and those brought in by outside agencies, the latter of which was to delegate responsibility for monitoring those detainees to either the outside agency, the prosecutor, or the courts in order to avoid a "turf war," the plaintiff was detained for eight days on the basis of a warrantless arrest without being brought before a judge or magistrate for a probable cause hearing. *Id.* at 325. The Sheriff, who had been sued in his official capacity, moved for summary judgment maintaining that either the arresting officer, the prosecutor, or the court bore responsibility for ensuring that detainees arrested without a warrant received a probable cause hearing and that his department should not be held accountable for the plaintiff's prolonged detention. *Id.* at 326. The Seventh Circuit found "unconvincing the sheriff's attempt to shrug off his federal constitutional responsibilities" holding that "[i]n the final analysis, the sheriff is the custodian of the persons

incarcerated in the jail, and as such, it is he who is answerable for the legality of their custody." *Id.* Accordingly, the court held that "[a] policy under which the sheriff holds onto a suspect until the arresting agency tells him to release the person is in terms a violation of the Fourth Amendment." *Id.* at 327. Notably, the court clarified that "in the present case it is far from uncontested that Sheriff Rovenstine had in place the kind of back-up plan relying on formal written complaints that saved the sheriff's system in *Armstrong* from condemnation as deliberately indifferent," and due to the parties' dispute regarding such a backup plan, summary judgment for the sheriff could not be sustained on that basis. *Id.*

The case before us is remarkably similar to this Seventh Circuit precedent. We agree with Hash that the Clark County Jail's practice of sending weekly emails to the courts containing the jail's current inmate roster is legally indistinguishable from the "will call" policy criticized in *Armstrong* and again in *Rovenstine*. We are unpersuaded by the Sheriff's rejoinder that, unlike the Allen County Jail's will call policy, his inmate roster is sent on weekly basis and contains the inmates' names alongside their warrant numbers, booking date, charge description, and other information.

The county sheriff is the final policymaker for county jails in Indiana, and, as such, state law places an affirmative duty on him/her "to take care of the county jail and the prisoners there." Ind. Code § 36–2–13–5(a)(7). In the cases of jail detainees arrested on a warrant, such care must extend to the statutory command that such a person "shall be taken promptly for an initial hearing before the court issuing the warrant...." Ind. Code

11

§ 35–33–7–4; see also Ind. Code § 35–33–2–2(a)(6) ("A warrant of arrest shall ... command that the person ... be arrested and brought before the court issuing the warrant, *without unnecessary delay....*"); and Hash Arrest Warrant, Dkt. 185–1 ("To the Sheriff of Clark County ... You are hereby commanded to arrest Jesse A Hash forthwith ... And for want of bail commit him to the jail of the County and *thereafter without unnecessary delay to bring him before the said court.* ") (emphasis added). Simply put, the *pro forma* emailing of the jail's inmate roster to the courts, even if the roster contains the inmates' name, warrant number, and booking date, does not satisfy the Sheriff's duties imposed on him by state law and the Constitution to ensure that detainees in his custody are not unlawfully subjected to prolonged confinement. *Armstrong*, 152 F.3d at 578 ("In a constitutional sense, how much more basic could it get—jails cannot confine people without the authority to do so."). As we have stated previously in this case, "Custodians who manage penal institutions are charged with maintaining an ongoing vigilance so that no prisoner under their care gets lost in the shuffle." Dkt. 266 at 17 n.2. A policy under which the Jail simply forwards its inmate roster to the courts, without more, operates with deliberate indifference to this obvious danger.

As in *Armstrong* and *Rovenstine*, Sheriff Rodden contends that Clark County Jail's policy is saved from criticism as deliberately indifferent due to the additional layers of protection the Jail provides to its inmates. Sheriff Rodden asserts that the Clark County Jail maintains a policy of accepting formal written grievances in which an inmate may request information regarding an institutional condition or condition of confinement,

including the length of his confinement. Unlike the guards in *Armstrong*, Rodden's deputies do not maintain a policy of refusing to accept those complaints. Rodden contends further that Hash never drafted or filed any type of formal complaint or grievance which could have alerted his deputies to his unduly protracted detention. Sheriff Rodden also points to Officer Lindon Dodd as providing additional protection for inmates in his role as Clark County Court Liaison, a position created by Sheriff Rodden and charged with "tak[ing] the inquiries from inmates or their family, research[ing] the chronological case summary to attempt to determine the issue and…go[ing] to the court if he could not find a response." Dkt. 167 at 15. According to Sheriff Rodden, these additional measures demonstrate that he was not indifferent to the inmates' length of incarceration and had taken affirmative steps to ensure their prompt appearance or release.

Hash, of course, maintains that he was never made aware of the Jail's grievance policy, nor was he ever directed to Officer Dodd. See Hash Dep. 60:1–63:25, 78. Rather, he claims to have made repeated inquiries of the jail's guards with whom he had contact regarding the length of his detention without a hearing, only to be rebuffed by their responses: "You'll get called when they call your name" and "You'll go to court when they call your name." Hash Dep. 81: 23–24. As a result, Hash's understanding of the Jail's policy made it comparable to a "will call" policy under which the Jail would take no action until directed to do so by the court or some other outside entity. Taking matters into his own hands, Hash drafted a letter to the Public Defender's Office regarding his

13

incarceration and submitted it through the Jail's "in-house mail" system.[3] He also sought the help of his girlfriend, Stephanie Leonard, whom he maintains placed a call to the Clark Circuit Court Clerk's Office on his behalf on October 6, 2013, the day immediately prior to his Initial Appearance on October 7, 2013.

Construing these facts in a light most favorable to Hash, we find that a reasonable jury could return a verdict in his favor on his due process claim. To hold otherwise would amount to a declaration that while neither the formal grievance policy nor the assistance of Officer Dodd was ever placed at Hash's disposal, those same policies, which were allegedly enacted to facilitate communications, instead operate as a post-deprivation obstacle to relief. That situation is untenable. *See Armstrong,* 152 F.3d at 580 ("For the guards to have continued to refuse Armstrong's complaints and for them to have continued only to check the will call list evinces the serious possibility of deliberate indifference to Armstrong's plight. Therefore ... Armstrong survives summary judgment."). Accordingly, we <u>DENY</u> Defendant's Motion for Summary Judgment as to Hash's suit against Clark County Sheriff Danny Rodden in his official capacity.

## II. Individual-Capacity Claim

Hash also seeks to hold Sheriff Rodden individually liable for his alleged deprivation of due process while at the Clark County Jail. In order to establish individual

---

[3] As has been explained to the Court, the Clark County Jail's "in-house mail" system essentially consisted of inmates drafting letters and either handing them to guards as they walked by or leaving them wedged in their cells' door for an officer to pick up later, and thereafter hoping that the letter would be delivered by hand to the correct destination, dependent on "whether someone would be willing to take it over." See Rodden Dep. at 24–26; Hash Dep. at 78.

14

liability under § 1983, Hash must establish that Sheriff Rodden was personally involved in the constitutional deprivation¸ *Palmer v. Marion Cnty.*, 327 F.3d 588 (7th Cir. 2003), *i.e.*, that, at minimum, he knew about the particular conduct causing Hash's deprivation and "facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what [he] might see." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Hash concedes that Sheriff Rodden had no personal contact with him during his sixty-day incarceration, nor did he personally arrest or detain him. Rather, he argues that Sheriff Rodden knew of, and turned a blind eye to, Hash's prolonged detention in the Jail. To establish Sheriff Rodden's actual knowledge and indifference to his detention, Hash cites only the Jail's weekly rosters for the weeks during which he was detained as well as his arrest warrant and booking sheet, neither of which was personally served or executed by Rodden. Even if we were to assume that Sheriff Rodden had access to the roster, maintained a policy of indifference (as described above) to the prolonged detention of inmates in the Clark County Jail, and was unresponsive to Hash's situation, the Seventh Circuit has stated clearly that "this does not add up to the kind of personal involvement for individual liability in sec. 1983 cases." *Luck v. Rovenstine*, 168 F.3d 323, 327 (7th Cir. 1999). Moreover, "this [lack of involvement] alone is enough to defeat [Hash's] individual capacity claim against the sheriff." *Id.*

Accordingly, we GRANT Defendants' Motion for Summary Judgment as to Hash's suit against Clark County Sheriff Danny Rodden in his individual capacity.

**Conclusion**

For the reasons detailed above, Defendants' Motion for Summary Judgment as to Plaintiff Jesse Hash [Docket No. 166] is <u>GRANTED</u> with regard Hash's claims against the Clark County Board of Commissioners, his Fourth Amendment claims against all Defendants, and his Fourteenth Amendment due process claim against Sheriff Danny Rodden in his individual capacity. The motion, however, is <u>DENIED</u> with regard to Hash's Fourteenth Amendment due process claims against Sheriff Danny Rodden in his official-capacity. Accordingly, trial shall proceed on that surviving claim.

**IT IS SO ORDERED.**

Date:   3/24/2017

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL
jonathan.nagy@atg.in.gov

James Michael Bolus, Jr.
JAMES M. BOLUS, JR. P.S.C.
bo@boluslaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP-New Albany
jlowe@k-glaw.com

Whitney Elizabeth Wood
KIGHTLINGER & GRAY, LLP-New Albany
wwood@k-glaw.com

Elizabeth A. Knight
KNIGHT HOPPE KURNIK & KNIGHT LTD (Schererville)
eknight@khkklaw.com

Joseph W. Smith
KNIGHT HOPPE KURNIK & KNIGHT LTD (Schererville)
jsmith@khkklaw.com

Brian P. Butler
LAW OFFICE OF BRIAN BUTLER
brian.butleresq@yahoo.com

Michael A. Augustus
MICHAEL A. AUGUSTUS, PSC
mike@boluslaw.com

David A. Arthur
OFFICE OF THE ATTORNEY GENERAL
David.Arthur@atg.in.gov

Brennan Soergel
SOERGEL LAW OFFICE PLLC
brennan@boluslaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com